IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

SUALEH KAMAL ASHRAF,

      Plaintiff,

vs.                    No.: 2:17-CV-02839-SHM-dkv

ADVENTIST HEALTH SYSTEM/
SUNBELT, INC.,

      Defendant.

_____

REPORT AND RECOMMENDATION ON THE DEFENDANT'S MOTION TO DISMISS

_____

On September 27, 2017, the plaintiff, Dr. Sualeh Kamal
Ashraf ("Dr. Ashraf"), filed a *pro se* defamation complaint
against the defendant, Adventist Health System/Sunbelt, Inc.
("Adventist Health"), (Compl., ECF No. 1-1), in which he claims
that Adventist Health caused him to lose employment
opportunities when it reported the revocation of his clinical
privileges to the National Practitioner Data Bank ("NPDB").[1]
(*Id.* ¶ 18.) The case has been referred to the United States

_____

[1]The NPDB maintains a data base of information about
healthcare providers pursuant to 42 U.S.C. § 11131 *et. seq.*
("the Act"). All health care entities are required by the Act
to report to the NPDB "a professional review action that
adversely affects the clinical privileges of a physician for a
period longer than 30 days." *Id.* § 11133(a)(1). According to
the Act, all information is confidential; only health care
entities can access the information. *Id.* § 11137(b).

Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (ECF No. 7.)

Now before the court is Adventist Health's November 21, 2017 motion to dismiss Dr. Ashraf's complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (Mot. Dismiss, ECF No. 6.) On February 2, 2018, Dr. Ashraf filed a response to Adventist Health's motion to dismiss. (Resp., ECF No. 11.)[2] On February 8, 2018, Adventist Health filed a reply to Dr. Ashraf's response. (Reply, ECF No. 16.)

For the following reasons, the court recommends that Adventist Health's motion to dismiss be granted and that Dr. Ashraf's complaint be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

## I. PROPOSED FINDINGS OF FACT

Dr. Ashraf is a cardiac physician who has practiced medicine in the United States for twenty-eight years and is licensed in Ohio, Florida, and Tennessee. (Compl. ¶¶ 4, 7, ECF No. 1-1.) According to the complaint, he worked for Adventist Health in Florida from 2005 until 2007. (*Id.* ¶ 8.) In the

---

[2]Dr. Ashraf's response was 45 days late. Nevertheless, given Dr. Ashraf's *pro se* status, the court will consider it at this time. Dr. Ashraf is again reminded that he must comply with the Federal Rules of Civil Procedure and the Local Rules of Court for the Western District of Tennessee. Failure to do so may result in dismissal of this case.

complaint, he alleges that Adventist Health "yielded to a competitive medical group," which he also calls "the Investigative and Executive Committee" ("Committee") to investigate him, (*id.* ¶¶ 9, 20), and that the Committee set up "kangaroo court hearings and accorded [him] false findings," (*id.* ¶ 10). He further alleges that Adventist Health reported those "false findings" to the NPDB and dismissed him from his job. (*Id.* ¶¶ 10-11, 13.)

In late 2014, Dr. Ashraf filed a defamation lawsuit against Adventist Health in the state of Florida to "address this grievance." (*Id.* ¶ 14.) The Florida court dismissed the suit as untimely because the time allowed for bringing suit under Florida's statute of limitations had expired. (*Id.* ¶ 15.) The decision was affirmed by the Florida Fifth District Court of Appeals. *See Ashraf v. Adventist Health System/Sunbelt, Inc., d/b/a Florida Hospital Apopka,* 200 So. 3d 173 (Fla. Dist. Ct. App. 2016), *review denied,* No. SC16-1389 (Fla. Aug. 23, 2016)(hereinafter *Ashraf I*).[3]

_____

[3]When deciding whether to grant a Rule 12(b)(6) motion to dismiss, the court will "primarily considers the allegations in the complaint," but also may consider any matter of public record appearing in the case. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)(quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997)). Here, Dr. Ashraf mentioned *Ashraf I* in his complaint, and *Ashraf I* is public record. (Compl. ¶¶ 14-15, ECF No. 1-1.) Therefore, the court may consider *Ashraf I* in its determination.

In 2017, Dr. Ashraf returned to Tennessee hoping to find a new job, but, he claims, he was "denied an employment opportunity in Tennessee" and "his efforts to obtain a medical practice in Tennessee were rebuffed" because of Adventist Health's report to the NPDB. (Compl. ¶¶ 3, 18, ECF No. 1-1.) He then filed the present defamation lawsuit against Adventist Health in Tennessee state court. (ECF No. 1-1.) Adventist Health removed the case to this court based on diversity jurisdiction. (Notice Removal, ECF No. 1.)

For relief, Dr. Ashraf requests an order to remove the NPDB report, damages, costs, interests, and attorney's fees. (Compl. 7, ECF No. 1-1.)

## II.  PROPOSED CONCLUSIONS OF LAW

In its motion to dismiss, Adventist Health argues that Dr. Ashraf's present lawsuit in Tennessee is barred by the statute of limitations, both Tennessee's and Florida's, and also by the doctrine of *res judicata*. (*See* ECF No. 6.) In response, Dr. Ashraf asserts that the doctrine of *res judicata* is not applicable to this lawsuit because the present lawsuit arises out of his recent denial of employment in Tennessee. (*See* ECF No. 11.) He further argues that Tennessee's statute of limitations applies, and his suit is timely. (*Id.*)

A.  Standard of Review for Failure to State a Claim

In assessing whether Dr. Ashraf's complaint states a claim

4

upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). To survive Rule 12(b)(6) dismissal following Iqbal and Twombly, a complaint must "'contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting Iqbal, 556 U.S. at 678). The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

When ruling on a motion to dismiss, the court may not consider matters outside of the pleadings. *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997); *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). For instance, the court may not consider factual allegations contained in the plaintiff's response to the motion to dismiss. *Smith v. Winkle*, No. 2:13-CV-784, 2014 WL 1796063, at *1 n.3 (S.D. Ohio May 6, 2014); *Corsetti v. Hackel*, No. 10-12823, 2013 WL 2372284, at *19 (E.D. Mich. May 28, 2013)("Thus, because plaintiff's newly-raised 'name' allegations are not found in the Complaint, the undersigned may not consider those allegations in ruling on defendants' motion to dismiss.).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtain*, 631 F.3d 380, 383 (6th Cir. 2011)(internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading." (internal quotation marks omitted)); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and

stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.    Statute of Limitations

Although Dr. Ashraf does not indicate in his present complaint the date on which Adventist Health reported its findings to the NPDB, according to *Ashraft I*, Adventist Health reported the denial of Dr. Ashraf's clinical privileges to the NPDB on December 17, 2008.  *Ashraf I*, 200 So. 3d at 174.  In October 2014, Dr. Ashraf filed his first defamation lawsuit in Florida regarding the NPDB report, which lawsuit was determined to be untimely under Florida's two-year statute of limitations for defamation.  *Id.* at 174-76.

Adventist Health now contends that Dr. Ashraf's present defamation lawsuit is likewise barred by the two-year statute of limitations in Florida, as well as Tennessee's one-year statute of limitations for defamation, because the report was made to the NPDB in 2008, and this present case was not filed until 2017, nearly ten years later. (Mot. Dismiss 9-11, ECF No. 6-1.) Dr. Ashraf, however, takes the position that each time the NPDB report is accessed by certified health care entities a new cause of action arises, and because he now lives in Tennessee, he has suffered an injury in Tennessee, and Tennessee's statute of limitations applies and has not expired. (Resp. 5-12, ECF No. 11.)

To resolve this issue, the court must first determine whether Tennessee's or Florida's statute of limitations applies. Jurisdiction in this case is based on diversity of citizenship. "A federal court sitting in diversity must apply the substantive law, including choice of law rules of the state in which it sits." *Czewski v. KVH Indus., Inc.*, 607 F. App'x 478, 480 (6th Cir. 2015)(citing *Phelps v. McClellan*, 30 F.3d 657, 661 (6th Cir. 1994)). This court therefore must apply Tennessee's choice of law rules. Under Tennessee's choice of law rules, Tennessee will apply its own law to matters of procedure. *Suntrust Bank v. Ritter*, No. E-2017-01045-COA-R3-CV, 2018 WL 674000, at *3 (Tenn. Ct. App. 2018)(citation omitted). In Tennessee, statutes

of limitations are considered matters of procedure because they "extinguish a party's remedy for a cause of action." *Id.* at *4; *see also Calway ex rel. Calaway v. Shucker*, 193 S.W.3d 509, 515 (Tenn. 2005)("[S]tatutes of limitations are procedural, extinguishing only the remedy." (citation omitted)).  As a result, the court must apply Tennessee's statute of limitations.

Pursuant to Tenn. Code Ann. § 28-3-104(a)(1)(A), Tennessee applies a one-year statute of limitations for actions for libel. As Dr. Ashraf's claim in this case is premised on written defamation, it is based on libel and must be commenced within a year after the cause of action accrues.  A defamation action accrues on the date the alleged defamatory language is published. *Riley v. Dun & Bradstreet, Inc.*, 172 F.2d 303, 308 (6th Cir. 1949).

The next issue is whether Tennessee's one-year statute of limitation had expired when Dr. Ashraf filed the present lawsuit in Tennessee.  To determine if the statute of limitations has expired, the court must first determine when the cause of action arose.  The parties do not dispute that Adventist Health reported the revocation of Dr. Ashraf's privileges and its findings to the NPDB on December 17, 2008. *Ashraf I*, 200 So. 3d at 174.  Adventist Health asserts that only one publication occurred when it reported its findings to the NPDB in December 2008, and therefore Dr. Ashraf's single cause of action accrued

9

in December 2008.   Dr. Ashraf asserts that a new cause of action
accrues each time the NPDB information is issued, and a new
statute of limitations begins to run.   To determine when the
cause of action arose, the critical question is whether each
dissemination by the NPDB of the Adventist Health report to a
prospective employer in Tennessee gives rise to a new cause of
action against Adventist Health, that is, whether the "single
publication rule" or the "multiple publication rule" should
apply.   Because jurisdiction in this case is based on diversity,
this court must apply Tennessee substantive law and is
"obligated to apply the law it believes the highest court of the
state would apply if it were faced with the issue." *Standard
Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir.
2013)(citation and internal quotation marks omitted).   If the
state's highest court has not decided the applicable law, the
court looks at "'all relevant data,' which includes the state's
appellate court decisions." *Saab Auto. AB v. Gen. Motors Co.*,
770 F.3d 436, 440 (6th Cir. 2014)(quoting *Garden City
Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.
1995)).

In 1973, in *Applewhite v. Memphis State University*, 495
S.W.2d 190, 195 (Tenn. 1973), the Tennessee Supreme Court
formally recognized that the single publication rule applies in

10

actions of libel to aggregate communications in the print
domain.

> Under the single publication rule, any mass
> communication that is made at approximately one time —
> such as a television broadcast or a single 'edition of
> a book, newspaper, or periodical' — is construed as a
> single publication of the statements it contains,
> thereby giving rise to only one cause of action as of
> the moment of initial publication, no matter how many
> copies are later distributed.

*Clark v. Viacom Int'l, Inc.*, 617 F. App'x 495, 502-03
(2015)(quoting *Applewhite*, 495 S.W.2d at 194 & Restatement
(Second) of Torts § 577A, cmt. C (1977)). The Tennessee Supreme
Court explained the policy reasons for its decision:

> The single publication rule is suited to the
> contemporary publishing world where large numbers of
> copies of a book, newspaper, or magazine are
> circulated. It would substantially impair the
> administration of justice to allow separate actions on
> each individual copy and it would create the
> possibility of harassment, and multiple recoveries
> against defendants. Therefore, we hold under
> Tennessee law a plaintiff should be limited to a
> single cause of action based on the circulation of
> copies of an edition of a book, newspaper, or
> periodical.

*Applewhite*, 495 S.W.2d at 194. Thus, it is clear that Tennessee
has adopted the single publication rule in the print domain for
aggregate communications.

While acknowledging the single publication rule of
*Applewhite* in his responsive brief, Dr. Ashraf nevertheless
insists that this court should apply the multiple publication
rule to his current claim against Adventist Health. In support

of his position, Dr. Ashraf relies on an unpublished decision of
the Tennessee Court of Appeals from 1998, *Swafford v. Memphis
Individual Practice Ass'n*, No. 02A01-9612-CV-00311, 1998 WL
281935 (Tenn. Ct. App. June 2, 1998).  Unpublished opinions in
Tennessee have persuasive value but they are not controlling
authority.  Tenn. Sup. Ct. R. 4(G)(1).

    *Swafford* is a factually analogous case involving a libel
lawsuit by a physician arising out of allegedly false
information reported to the NPDB.  In *Swafford*, the Tennessee
Court of Appeals held that the single publication rule did not
apply and "that each dissemination of the allegedly defamatory
information by the [NPDB] gives rise to a separate cause of
action," and "a separate limitations period attaches to each
publication."  *Swafford,* 1998 WL 281935, at *1, *10.  In other
words, according to the Tennessee Court of Appeals decision in
*Swafford*, the multiple publication rule applies to claims
arising out of allegedly defamatory statements submitted to the
NPDB.  The court of appeals further held that "the limitations
period for each claim commence[s] on the date on which the
potential user receive[s] the information from the [NPDB]."  *Id.*
at *10.

    In reaching its decision, the Tennessee Court of Appeals
noted that the issue of "[w]hether the single publication rule
should be applied to the dissemination of allegedly defamatory

information in the [NPDB] to health care providers [was] an issue of first impression in Tennessee." *Id.* at *5. Finding no published opinions in other states in defamation cases regarding the access of information from the NPDB, it looked at decisions from other states with "analogous facts," specifically decisions in cases arising under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, and the dissemination of allegedly false information in a credit report by a credit reporting agency to other entities.[4] *Id.* at *6. The Tennessee Court of Appeals reasoned that the dissemination of NPDB reports to health care providers is analogous to the dissemination of credit reports by credit reporting agencies. *Id.* at *8. The Court of Appeals further reasoned that "[u]nlike [a] mass publication," only a few entities would have access to the information transmitted by the NPDB, and "[w]hile information in the [NPDB] may be accessed by several entities, the justification for the single

---

[4] *See Hyde v. Hibernia Nat'l Bank*, 861 F.2d 446 (5th Cir. 1988)(rejecting application of the single publication rule to the Fair Credit Reporting Act and holding that each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies); *Lawhorn v. Trans Union Credit Info. Corp.*, 515 F. Supp. 19 (E.D. Mo. 1981)(holding that each dissemination of the plaintiff's credit report containing inaccurate information was a separate violation of the Act and commenced the beginning of the running of a new statute of limitations); *Schneider v. United Airlines, Inc.*, 208 Cal. App. 3d 71 (Cal. App. 1989)(distinguishing the case from situations in which the single publication rules was applied and holding that "where republication reaches a new entity or person, repetition justifies a new cause of action").

publication rule, a vast multiplicity of lawsuits resulting from a mass publication, is simply not present here." *Id.*

Subsequent to the Tennessee Court of Appeals' decision in *Swafford*, the Supreme Court of Tennessee had the occasion to address the law of defamation in Tennessee in *Sullivan v. Baptist Memorial Hospital*, 995 S.W.2d 569 (Tenn. 1999). In *Sullivan*, the plaintiff, after her termination by Baptist Hospital, applied for a nurse's position with two other hospitals. *Id.* at 570-71. She claims she was compelled to reveal the defamatory reason Baptist Hospital terminated her, and, as a result, neither hospital hired her. *Id.* at 571. The issue before the court in *Sullivan* was whether in a defamation case, the element of publication is satisfied when an employee is compelled to disclose to a prospective employer the reason given for termination by a former employer, that is, whether compelled self-publication in an employment setting constitutes publication for the purposes of a defamation action. *Id.* at 572. Adhering to the majority rule that defamation plaintiffs cannot take advantage of the self-publication doctrine, even when the publication is compelled in an employment setting, the Tennessee Supreme Court declined to adopt the doctrine of self-publication in defamation cases. *Id.* at 574.

The Tennessee Supreme Court's rejection of the doctrine of self-publication was "based on policy reasons, including the

14

public's interest in open communication about employment
information and limiting the scope of defamation liability."
*Id.* at 573. The Tennessee Supreme Court reasoned that "a
plaintiff relying on the doctrine of self-publication would not
only have the ability to control the statute of limitations but
also the number of causes of action which arise." *Id.* at 574.
"In other words, a plaintiff need only apply for a job in order
to create or renew a claim for 'compelled' self-publication,
[and] [c]onsequently, the defendant employer could potentially
be subject to liability throughout the plaintiff's lifetime."
*Id.*

More recently, in 2015, in *Clark v. Viacom*, the Sixth
Circuit considered whether Tennessee's "one-year statute of
limitations permit[ted the plaintiffs] to assert defamation
claims with respect to statements that were posted to publicly
accessible websites before the one-year limitations period but
[] remained continuously accessible to the online public since
then." 617 F. App'x at 496. The plaintiffs first argued on
appeal that defamatory statements that continued to be
accessible to the public years after they were originally posted
caused "continuing wrong to them, due to the fact that the
statements . . . are functionally immortal and may continue to
be viewed by third parties possibly in perpetuity." *Id.* at 500.
The Sixth Circuit "readily dispatched" this issue stating that

"Tennessee courts have never recognized a 'continuing defamation.'" *Id.* (quotations omitted). Under Tennessee law, a defamation claim accrues at "the moment of publication," and the statute of limitations would bar a libeled plaintiff from recourse, "even where the libel continues to cause reputational harm." *Id.* at 500-01.

The plaintiffs in *Clark* also argued that the defendant "republished the defamatory statements in question, thereby restarting the limitations period." *Id.* at 500. The *Clark* plaintiffs acknowledged that Tennessee has adopted the single publication rule in the print domain, but, nevertheless asserted that the "multiple publication rule" applies to statements posted to online websites. *Id.* at 503. The Sixth Circuit disagreed. It found that the same policy considerations applied to the online context, and, thus, it would be highly unusual for the Tennessee Supreme Court to "reverse course on the policy principles noted in its controlling defamation jurisprudence, especially in order to stand alone against national consensus." *Id.* at 504.[5]

---

[5]The *Clark* court distinguished *Swafford* because *Swafford* involved a private database that could be accessed only by certain entities in the health care industry and not a mass communication on a publicly accessible news website. *Id.* at 504. Nevertheless, the *Clark* court's opinion is highly persuasive for its recognition that the statute of limitations would bar a libeled plaintiff from recourse, "even where the libel continues to cause reputational harm," and for its

Since the *Swafford* decision, other courts have rendered opinions regarding defamation actions arising from information posted to the NPDB and have adopted the single publication rule. *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, No. 6:08CV466-ORL-28GJK, 2010 WL 1408391 (M.D. Fla. Apr. 6, 2010), *aff'd*, 451 F. App'x 862 (11th Cir. 2012); *Ashraf I*, 200 So. 3d 173; *see also Rare 1 Corp. v. Moshe Zwiebel Diamond Corp.*, 822 N.Y.S.2d 375, 377–78 (N.Y. 2006)(applying the single publication rule to allegedly defamatory information published in a fee-based, commercially created website designed to facilitate networking within a professional community that could be only viewed by paying subscribers).

The Middle District of Florida case of *Pierson*, 2010 WL 1408391, involves facts very similar to those before this court and is particularly persuasive. The plaintiff surgeon in *Pierson* was indefinitely suspended from emergency and trauma call and consulting privileges at two Florida hospitals by the defendant healthcare entity. *Id.* at *4. The defendant healthcare entity filed an Adverse Action Report with the NPDB as it was required to do. *Id.* The defendant surgeon then moved to California where he claims the NPDB report was republished. *Id.* at *11. Four years after the report was filed with the

---

discussion of policy principles that warrant the adoption of the single publication rule. *Id.* at 500-01, 504.

NPDB, he commenced a defamation action in Florida. *Id.* at *12. The plaintiff surgeon argued that an NPDB report was analogous to a credit report and relied on *Musto v. Bell S. Telecommunications Corp.*, 748 So. 2d 296 (Fla. Dist. Ct. App. 1999), a decision involving the Fair Credit Report Act, holding that Florida's two-year statute of limitations should begin to run anew each time a credit report is issued. *Pierson*, 2010 WL 1408391, at *12.

The district court declined to extend *Musto* beyond the credit report context. *Id.* The court stated that, unlike in *Musto*, the plaintiff "knew of the contents of the Adverse Action Report at the time it was issued to the NPDB; thus, the potential pitfall of credit report subjects not knowing of a defamatory credit statement until the statute of limitations has run is not present." *Id.* It also reasoned that were the multiple publication rule to apply, a plaintiff "could apply for employment over and over again and create a new defamation claim based on reissuances of the NPDB report at his whim." *Id.* The court followed a single publication rule, holding that the statute of limitations accrued when the report was made to the NPDB. *Id.*[6]

---

[6] The Eleventh Circuit affirmed the district court. *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 451 F. App'x 862 (11th Cir. 2012).

In *Ashraf I*, the Florida Supreme Court followed the *Pierson* court's reasoning and held that Florida's two-year statute of limitations "begins to run when a report is issued to the NPDB; any subsequent issuance of that report to legally authorized entities does not accrue a new limitations period." *Ashraf I*, 200 So. 3d at 175.

Based on the Tennessee Supreme Court's policy principles enunciated in *Sullivan* and *Clark* and post-*Swafford* decisions from other jurisdictions involving defamation claims arising from compelled adverse action reports to the NPDB, it is the conclusion of this court that the Tennessee Supreme Court would not apply the multiple publication rule as set forth in the unpublished court of appeals decision in *Swafford* but would instead apply the single publication rule in this case. As in *Sullivan*, if Tennessee were to follow the multiple publication doctrine, a plaintiff could create a new cause of action for defamation every time the employee applies for a new job with a different healthcare entity. *See Sullivan*, 995 S.W.2d at 574. This would be detrimental to the public's interest in requiring healthcare providers to report adverse employment information to the NPDB. A plaintiff could control the statute of limitations, the number of defamation claims he could have, and he could make a defendant liable to him for the duration of his lifetime. The *Sullivan* standard is more applicable than *Swafford* in the

19

context of the mandatory NPDB reports such as the one before the court.   Similarly, the defamatory information the Supreme Court of Tennessee addressed in *Sullivan* was only accessible by a handful of entities: the potential employers of the person allegedly defamed.   *Id.*   Just as in *Sullivan*, the readers of the statements about Dr. Ashraf would be the "health care entities" where he would seek employment.   As the court explained in *Clark*, "Tennessee [] fully accepts the possibility that limitations principles may bar a libeled plaintiff from recourse, even where the libel continues to cause reputational harm."   *Clark*, 617 F. App'x at 501.

Accordingly, under the single-publication rule, Dr. Ashraf's defamation claim accrued when Adventist Health reported the denial of Dr. Ashraf's clinical privileges to the NPDB on December 17, 2008, *see Ashraf I*, 200 So. 3d at 174.   Therefore, Dr. Ashraf's claim is barred by Tennessee's one-year statute of limitations.[7]

---

[7]In addition, Tenn. Code Ann. § 28-1-112 states that "[w]here the statute of limitations of another state or government has created a bar to an action upon a cause accruing therein, while the party to be charged was a resident in such state or such government, the bar is equally effectual in this state."   The court already determined that the cause of action accrued only once in Florida on December 17, 2008, when Adventist Health made the report to the NPDB.   Florida's two-year statute of limitations creates a bar to Dr. Ashraf's defamation claim based on the report to the NPDB, and, pursuant to Tenn. Code Ann. § 28-1-112, that bar is equally effectual in Tennessee.

Moreover, Dr. Ashraf has not alleged here when he applied for employment while he resided in Tennessee, which healthcare entity accessed the NPDB report, and, as particularly relevant to the statute of limitations issue, when the report was accessed.[8]    Therefore, even if the multiple-publication rule applied, Dr. Ashraf has not sufficiently alleged that he has suffered an injury in Tennessee within the one-year statute of limitations.

C.    Res Judicata

Having determined that a new cause of action does not arise in Tennessee every time a health care entity accesses the NPDB report, Dr. Ashraf's defamation claim against Adventist Health is also barred by the doctrine of res judicata because such claim was already adjudicated in *Ashraf I*.    The weight of authority supports dismissal for failure to state a claim when a case is barred by the doctrine of res judicata; therefore, defendants are entitled to raise the res judicata issue in their

---

[8]In the complaint, Dr. Ashraf merely states that "his efforts to obtain medical practice in Tennessee were rebuffed because of the wrong and false Adventist report deposited with NPDB." (Compl. ¶ 18, ECF No. 1-1.) Although Dr. Ashraf adds additional factual allegations in the response to the motion to dismiss, as discussed above, the court cannot consider them in ruling on the motion to dismiss. *See Smith*, 2014 WL 1796063, at *1 n.3 (stating that the court may not consider factual allegations contained in the plaintiff's response to the motion to dismiss); *Corsetti*, 2013 WL 2372284, at *19 ("Thus, because plaintiff's newly-raised 'name' allegations are not found in the Complaint, the undersigned may not consider those allegations in ruling on defendants' motion to dismiss.").

respective Rule 12(b)(6) motions to dismiss. *See, e.g.,*
*Rushford v. Firstar Bank, N.A.*, 50 F. App'x 202, 203 (6th Cir.
2002)(affirming "the district court's dismissal pursuant to Fed.
R. Civ. P. 12(b)(6) based on the doctrine of res judicata");
*Thompson v. U.S., Small Bus. Admin.*, 8 F. App'x 547, 549 (6th
Cir. 2001)(affirming failure-to-state-a-claim dismissal that was
based on res judicata); *City of Canton v. Maynard*, 766 F.2d 236,
239 (6th Cir. 1985)(per curiam)(affirming district court's Rule
12(b)(6) dismissal on res judicata grounds).   "[I]f an
individual is precluded from litigating a suit in a state court
by the traditional principles of res judicata, he is similarly
precluded from litigating the suit in federal court." *Gutierrez
v. Lynch*, 826 F.2d 1534, 1537 (6th Cir. 1987)(citation omitted).
Thus, federal courts "look to the state's law to assess the
preclusive effect [that the state] would attach to that
judgment." *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth
Third Bank*, 333 F. App'x 994, 998 (6th Cir. 2009)(citations
omitted).

    Under Florida law, a party must meet two requirements to
assert res judicata as a defense.  First, a judgment must have
been rendered on the merits in the prior decision. *Pearce v.
Sandler*, 219 So. 3d 961, 966 (Fla. Dist. Ct. App. 2017)(citing
*Ludovici v. McKiness*, 545 So. 2d 335, 337 (Fla. Dist. Ct. App.
1989)).  Second, there must be four identities between the prior

decision and the case at hand: "(1) identity in the thing sued for; (2) identity of the cause of action; (3) identity of the persons or parties to the actions; and (4) identity of the quality or capacity of the persons for or against whom the claim is made." *Id.* (quoting *Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. Dist. Ct. App. 2005)(internal citations omitted)).

Regarding the first prerequisite, a judgment on the merits was rendered in *Ashraf I*. In Ashraf I, the court held that Florida's two-year statute of limitations under the single publication rule barred Dr. Ashraf's claim against Adventist Health, and, thus, affirmed dismissal of such claim. *Ashraf I*, 200 So. 3d at 174. Under Florida law, "a dismissal based on statute of limitations grounds constitutes an adjudication on the merits for purposes of res judicata." *Carnival Corp. v. Middleton*, 941 So. 2d 421, 424 (Fla. Dist. Ct. App. 2006)(citing *Allie v. Ionata*, 503 So. 2d 1237, 1242 (Fla. 1987)).

Second, the court must decide whether there are four identities connecting the prior decision to the one at hand. First, the things sued for are identical. Dr. Ashraf sued for injunctive relief in the prior decision, and, here, he does the same. The causes of action are identical because they both allege defamation. The third factor is satisfied because the parties in the case at hand are the same parties as the prior case. Finally, the parties are in the same capacity because Dr.

Ashraf and Adventist Health are the plaintiff and defendant, respectively, in both cases.

As both prerequisites and the four identities are satisfied, the court recommends dismissal of the complaint because the cause of action is barred under Florida's doctrine of res judicata.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Adventist Health's motion to dismiss be granted and that Dr. Ashraf's defamation claim be dismissed for failure to state a claim upon which relief can granted.

Respectfully submitted this 14th day of May, 2018.


s/ Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE



### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.