IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| SUALEH KAMAL ASHRAF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17-cv-2839-SHM-dkv |
| v. ) | |
| ) | |
| ADVENTIST HEALTH ) | |
| SYSTEM/SUNBELT, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Before the Court is the Magistrate Judge's Report and Recommendation (the "Report"), dated May 14, 2018. (ECF No. 20.) The Report recommends granting Defendant Adventist Health System/SunBelt, Inc.'s ("Adventist") Motion to Dismiss Plaintiff Sualeh Kamal Ashraf's Complaint for Failure to State a Claim (the "Motion to Dismiss") (ECF No. 6). (Id. at 80.) Plaintiff objected to the Report on May 31, 2018. (ECF No. 21.) Defendant responded on June 14, 2018. (ECF No. 24.)

For the following reasons, the Court declines to adopt the Report.

## I. Background

On September 27, 2017, Plaintiff filed a *pro se* complaint against Adventist in the Circuit Court for Shelby County, Tennessee, alleging defamation. (Compl., ECF No. 1-1.) Plaintiff alleges that Adventist caused Plaintiff to be denied employment opportunities when it reported the revocation of his clinical privileges to the National Practitioner Data Bank ("NPDB"). (Id.)

The NPDB maintains an informational data base about healthcare providers pursuant to 42 U.S.C. §§ 11131, et. seq. ("the Act"). Under the Act, all health care entities must report to the NPDB "a professional review action that adversely affects the clinical privileges of a physician for a period longer than 30 days." Id. § 11133(a)(1). All information is confidential and is accessible only by health care entities. Id. § 11137(b). Any breach of confidentiality is subject to a civil monetary penalty. Id.

Plaintiff alleges that in 2014 he filed a defamation lawsuit against Adventist in Florida to "address this [same] grievance." (Compl., ECF No. 1-1 ¶ 14.) The Florida court dismissed the suit as time-barred under Florida's statute of limitations. (Id. ¶ 15.)

On November 15, 2017, Adventist removed to this Court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.)

On November 21, 2017, Adventist filed its Motion to Dismiss. (ECF No. 6.) Plaintiff responded on February 2, 2018. (ECF No. 11.) Adventist replied on February 8, 2018. (ECF No. 16.)

On May 14, 2018, Chief United States Magistrate Judge Diane K. Vescovo entered the Report. (ECF No. 20.) It recommends granting Adventist's Motion to Dismiss. (Id. at 80.) The Report explains that:

> Based on the Tennessee Supreme Court's policy principles enunciated in Sullivan and Clark and post-Swafford decisions from other jurisdictions involving defamation claims arising from compelled adverse action reports to the NPDB, it is the conclusion of this court that the Tennessee Supreme Court would not apply the multiple publication rule as set forth in the unpublished court of appeals decision in Swafford but would instead apply the single publication rule in this case. . . . Accordingly, under the single-publication rule, Dr. Ashraf's defamation claim accrued when Adventist Health reported the denial of Dr. Ashraf's clinical privileges to the NPDB on December 17, 2008. Therefore, Dr. Ashraf's claim is barred by Tennessee's one-year statute of limitations.

(Id. at 97-98 (citations omitted).)

On May 31, 2018, Plaintiff filed an objection to the Report. (ECF No. 21.) Defendant responded on June 14, 2018.

3

(ECF No. 24.) On June 21, 2018, Plaintiff moved to strike Defendant's response. (ECF No. 27.)[1]

**II. Standard of Review**

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district-court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003). For dispositive matters, "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1). The district court is not required to review -- under a *de novo* or any other standard -- those aspects of the report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the

---

[1] Plaintiff contends that Adventist's response "lacks the necessary signatures required under Fed. Rules. of Civ. Pro. 11(a)," and thus that the response should be stricken. (ECF No. 27 at 141.) Adventist's counsel of record, Paul E. Prather, signed the response. (ECF No. 26 at 137.) He also included a certificate of service. (Id.) The signature and certificate comply with federal and local rules. Plaintiff's motion to strike Adventist's response is DENIED.

4

magistrate judge's findings and rulings to which no specific objection is filed.  Id. at 151.

**III. Analysis**

Plaintiff does not object to the Magistrate Judge's findings of fact.  Those findings are adopted.  See Arn, 474 U.S. at 150.

Plaintiff objects to the Magistrate Judge's legal conclusion that the single-publication rule applies to Plaintiff's defamation claim.  (ECF No. 21 at 107.)  Plaintiff does not object to any other legal conclusions by the Magistrate Judge.  With the exception of unchallenged conclusions that rely on the Magistrate Judge's statute of limitations decision, any unchallenged legal conclusions are adopted.[2]  Arn, 474 U.S. at 150.

Under the single-publication rule, a plaintiff's cause of action accrues once, at the time of publication.  Later publications do not give rise to additional causes of action for defamation.  Applewhite v. Memphis State Univ., 495 S.W.2d 190, 194 (Tenn. 1973).

---

[2] The Report explains: "Having determined that a new cause of action does not arise in Tennessee every time a health care entity accesses the NPDB report, Dr. Ashraf's defamation claim against Adventist Health is also barred by the doctrine of res judicata because such claim was already adjudicated in Ashraf I."  (ECF No. 20 at 99.)  That conclusion relies on the Magistrate Judge's statute of limitations decision.

5

Plaintiff argues that the republication doctrine should apply and contends "that a new injury occurred in Tennessee in 2017 when [Plaintiff] applied for a job and was rejected because of the defamatory reporting made by [Adventist] to the NPDB." (ECF No. 21 at 107.) Plaintiff argues that the Magistrate Judge should have followed Swafford v. Memphis Individual Practice Ass'n, No. 02A01-9612-CV-00311, 1998 WL 281935 (Tenn. Ct. App. June 2, 1998). (Id. at 107-08.) Swafford held that the republication doctrine applies to the dissemination of information through the NPDB. 1998 WL 281935, at *10. Each transmission of the defamatory information is a separate republication of that material, giving rise to a new cause of action. See Applewhite, 495 at 193; see also Swafford, 1998 WL 281935, at *6-8 (citing Restatement of Torts (2d) § 577A and collecting cases).

The Magistrate Judge considered Swafford, but declined to follow it because it is an unpublished, non-controlling opinion and because subsequent Tennessee and non-Tennessee authority support an opposite result. (ECF No. 20 at 90-95.) Unpublished state court opinions, which would not be treated as binding precedent by the state court, are not binding precedent in federal court. S. Ry. Co. v. Foote Mineral Co., 384 F.2d 224 (6th Cir. 1967). Unpublished opinions in Tennessee have

6

persuasive value, but are not controlling authority. Tenn. Sup. Ct. R. 4(G)(1).

A federal court adjudicating claims premised on state law must "apply state law in accordance with the controlling decisions of the state supreme court." Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc., 249 F.3d 450, 454 (6th Cir. 2001). "If the state supreme court has not yet addressed the issue presented, [the federal court] must predict how the [state supreme] court would rule by looking to all the available data." Id. "'Relevant data' include decisions of the state appellate courts, even if they are unreported." Metro. Gov't of Nashville & Davidson Cty. v. Affiliated Computer Servs., Inc., No. 3:07CV0080, 2008 WL 11393151, at *21 n.8 (M.D. Tenn. July 17, 2008) (citing Allstate Ins. Co., 249 F.3d at 454 ("Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless [the Court is] presented with persuasive data that the [state supreme court] would decide otherwise.")).

"The traditional common law rule was that distribution of numerous copies of a libelous writing created multiple causes of action each one accruing at the time of distribution." Applewhite, 495 S.W.2d at 193. In the twentieth century, courts began adopting the single-publication rule as part of

7

the common law, finding it "more suited to contemporary life." Id. (discussing evolution of republication and single-publication doctrines).

Before the Tennessee Supreme Court's 1973 decision in Applewhite, "Tennessee ha[d] not adopted the multiple publication rule or the single publication rule." Id. at 193. The Applewhite court adopted the single-publication rule in the context of book, newspaper, and periodical publishing. Plaintiff alleged that defendants had written and published a book that contained false statements about plaintiff. Id. at 191. The book was published multiple times over several months. Id. Defendants moved to dismiss, arguing that plaintiff's defamation claims were time-barred. Id. The court reasoned that

> [t]he single publication rule is suited to the contemporary publishing world where large numbers of copies of a book, newspaper, or magazine are circulated. It would substantially impair the administration of justice to allow separate actions on each individual copy and it would create the possibility of harassment, and multiple recoveries against defendants.

Id. at 194. The court held that, "under Tennessee law[,] a plaintiff should be limited to a single cause of action based on the circulation of copies of an edition of a book, newspaper, or periodical." Id.

The Applewhite court discussed two appellate court decisions applying Tennessee's statute of limitations in defamation cases where republication had occurred: (1) Underwood v. Smith, 93 Tenn. 687, 27 S.W. 1008 (1894), which dealt with an article published in the Knoxville Evening Sentinel and then republished the next morning in the Knoxville Daily Tribune; and (2) Riley v. Dun & Bradstreet, 172 F.2d 303 (6th Cir. 1949), which dealt with the timeliness of a defamation claim based on the republication of a credit report. The court found Underwood "inapplicable" because "[t]hat case did not consider the question of whether separate copies of the same issue would create separate causes of action[.]" Id. at 192. It distinguished Riley because in Applewhite "no second edition or other reprinting has been shown and the Riley case does not consider whether recent distribution without a republication could support an action." Id.

Applewhite established that "Tennessee formally recognized that [the] multiple publication rule was out of sync with modern mass communication technologies and joined the majority of other states in adopting the 'single publication rule.'" Clark v. Viacom Int'l Inc., 617 F. App'x 495, 502 (6th Cir. 2015). Any mass communication -- "such as a television broadcast or a single 'edition of a book, newspaper, or

9

periodical'" -- would give "rise to only one cause of action as of the moment of initial publication, no matter how many copies are later distributed." Id. (citing Applewhite, 495 S.W.2d at 194; Restatement (Second) of Torts § 577A, cmt. c (1977)). The adoption of the single-publication rule ended "'the potential to subject the publishers of books and newspapers to lawsuits stating hundreds, thousands, or even millions of causes of action for a single issue of a periodical or edition of a book,'" and prevent "toll[ing] the statute of limitations 'indefinitely, perhaps forever,' thereby threatening mass publishers with a double-edged sword: 'unending and potentially ruinous liability as well as overwhelming (and endless) litigation.'" Id. at 502 (quoting Christoff v. Nestle USA, Inc., 47 Cal.4th 468, 97 Cal.Rptr.3d 798, 213 P.3d 132, 138 (2009)). Based on Applewhite, the Sixth Circuit concluded that the Tennessee Supreme Court would extend the single-publication rule to "mass communications on a publicly accessible news website." Id. at 503.

Twenty-five years after Applewhite, the Tennessee Court of Appeals decided Swafford. In Swafford, the NPDB had provided allegedly defamatory information to health care entities that requested the information directly from the electronic data bank the NPDB maintained. 1998 WL 281935, at *1. "Each

transmission . . . was released in response to an affirmative request by a hospital or other health care entity" and the databank could be accessed only by certified health care entities. Id. at *5.

Swafford recognized that Tennessee generally follows the single-publication rule. Id. The court concluded, however, that, unlike the "contemporary publishing world" at issue in Applewhite, the information provided by the NPDB constituted discrete publications. Id. at *8. The court analogized the limited-access NPDB database to a credit-report database under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, et seq. Id. at *6. Under the Act, as under the FCRA, certified entities request a confidential report on separate and distinct occasions. Id. at *8. Each transmission of a confidential credit report is a separate defamatory incident, triggering the statute of limitations. Id. at *6-8 (collecting cases). By analogy to the FCRA, the court held that the republication doctrine applies each time a certified entity directly requests the information from the NPDB's electronic data-bank. Id. at *8. Since Swafford, no reported decision has addressed whether the republication doctrine applies to defamation claims arising from information disseminated by the NPDB. No Tennessee court has cited Swafford's single-publication-rule analysis. No

11

other Tennessee court has applied the republication doctrine in any context.

Some courts outside Tennessee have applied the republication doctrine in the NPDB context because the database is confidential and dissemination is restricted.  See, e.g., Stephan v. Baylor Med. Ctr. at Garland, 20 S.W.3d 880, 889 (Tex. App. 2000); Williams v. Univ. Med. Ctr. of S. Nev., No. 2:09-CV-00554-PMP, 2010 WL 3001707, at *6 (D. Nev. July 28, 2010).  But see Ashraf v. Adventist Health Sys./Sunbelt, Inc., 200 So. 3d 173, 175 (Fla. Dist. Ct. App. 2016).

In Clark, the Sixth Circuit recognized that the holding in Swafford "does not apply to information that is available online to the general public" because such public sites are distinguishable from "the private database entries at issue in Swafford."  617 F. App'x at 504 (collecting cases finding same).  The court in Clark did not discuss the merits or validity of Swafford.  Other courts have cited Swafford to distinguish it.  See, e.g., Oja v. U.S. Army Corps of Engineers, 440 F.3d 1122, 1133 (9th Cir. 2006) (citing Swafford) (distinguishing publicly accessible online sources from those in Swafford); Nationwide Bi-Weekly Admin., Inc. v. Belo Corp., 512 F.3d 137, 143 (5th Cir. 2007) (citing Swafford) (same); Churchill v. State, 378 N.J. Super. 471, 483, 876 A.2d

311, 319 (App. Div. 2005) (citing Swafford) (same). Tennessee courts have not abrogated Swafford or questioned its reasoning.

The year after Swafford, the Tennessee Supreme Court, in Sullivan v. Baptist Mem'l Hosp., addressed the self-publication doctrine. 995 S.W.2d 569, 572 (Tenn. 1999). The Sullivan court did not cite Swafford. Sullivan held that Tennessee does not recognize self-publication as a "publication" for defamation purposes. Id. at 569.

Sullivan was a nurse who was compelled to self-report that she had been terminated for allegedly misappropriating hospital supplies. Id. at 571. She claimed that each time she was compelled to self-report was a "publication" giving rise to a new claim for defamation. Id. at 572. Based on precedent and policy concerns, the court concluded that self-publication is not a "publication" for defamation purposes. Id. at 572-74. The Sullivan court did not address single publication or republication.

In addition to rejecting the self-publication doctrine because of employer-employee policy concerns, Sullivan concluded that treating self-publication as a publication would give plaintiffs a perverse incentive not to mitigate damages. Id. at 574. If a new cause of action arises with each self-publication, a plaintiff "would not only have the ability to

13

control the statute of limitations but also the number of causes of action which arise." Id. The Sullivan court did not make clear whether this perverse incentive, alone, would be sufficient to reject the doctrine of self-publication.

The Court's task is to predict whether the Tennessee Supreme Court would apply the republication doctrine in the NPBD context. Swafford is unreported. It is not binding. It appears to be an outlier in Tennessee. It has not been cited by any Tennessee court in a published or unpublished decision. The single publication rule is the law in Tennessee, adopted and applied by the Tennessee Supreme Court. The Swafford court is the only Tennessee court to have applied the republication doctrine in any context.

The Court is not persuaded by the reasoning in Swafford. Finality is the goal of statutes of limitations. Under the Swafford doctrine, plaintiffs could avoid the statute whenever they applied for new positions and potential employers received mandated NPDB reports. See 42 U.S.C. § 11135(a)(1) (hospitals have a duty to obtain information when a physician applies to be on the medical staff); see also Pierson v. Orlando Reg'l Healthcare Sys., Inc., No. 6:08CV466-ORL-28GJK, 2010 WL 1408391, at *12 (M.D. Fla. Apr. 6, 2010), aff'd, 451 F. App'x 862 (11th Cir. 2012) ("Plaintiff could apply for employment

over and over again and create a new defamation claim based on reissuances of the NPDB report at his whim."). The problem is well illustrated here, where Adventist reported the denial of Plaintiff's clinical privileges in 2008, almost ten years ago. A trial of the case would raise serious questions about the availability of witnesses and documents and the reliability of distant memories.

Although relying on <u>Swafford</u> is problematical, it is the only judicial expression of Tennessee law that is directly on point. The Court is not permitted to substitute its own policy preferences or subjective view of Tennessee law. The test is how the Tennessee Supreme Court would rule looking at all of the relevant data. Relevant data include the decisions of Tennessee appellate courts. This Court should not disregard those decisions without persuasive, countervailing data demonstrating that the Tennessee Supreme Court would decide otherwise. There are no such countervailing data in this case.

The Court is persuaded that the decision in <u>Swafford</u> is the best predictor of how the Tennessee Supreme Court would decide the issue that controls the Motion to Dismiss. That is, the Tennessee Supreme Court would decide that the republication doctrine applies in the context of information disseminated by

the NPDB and that the state of limitations does not bar Plaintiff's defamation claim.

The Court declines to adopt the Report's legal conclusion that the single-publication rule applies to Plaintiff's defamation claim.

**IV. Conclusion**

For the foregoing reasons, the Motion to Dismiss is DENIED.

So ordered this 5th day of July, 2018.

*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE